Crawford B. **MURTON** and Vesuvius Crucible Company, Appellants,

v.

David L. **LADD**, Commissioner of Patents, Appellee.

No. 19083.

United States Court of Appeals District of Columbia Circuit.

Argued May 6, 1965.

Decided Sept. 17, 1965.

Petition for Rehearing Denied Nov. 17, 1965.

---

3. We think the ruling was on the merits of the question whether Rule 2.117(a) required Rule 13(a) to be applied.

Burger, Circuit Judge, dissented.

Mr. Edward Hoopes III, Pittsburgh, Pa., with whom Messrs. Spencer B. Michael and Richard H. Bradford, Washington, D. C., were on the brief, for appellants.

Mr. George C. Roeming, Atty., United States Patent Office, with whom Mr. Clarence W. Moore, Solicitor, was on the brief, for appellee.

Before FAHY, Circuit Judge, BASTIAN, Senior Circuit Judge, and BURGER, Circuit Judge.

FAHY, Circuit Judge:

This appeal is from a judgment of the District Court in favor of the Commissioner of Patents in a suit brought under 35 U.S.C. § 145 by appellants as claimants to an invention. Only Claim 2 of several original claims, one of which was allowed, is involved on this appeal. Those not allowed, other than Claim 2, have been withdrawn. The invention is designated as Serial No. 759,670, filed September 8, 1958. As described by appellants it is a ladle stopper used to control the outflow of molten steel through a nozzle in the bottom of so-called "bottom pour" ladles which receive the molten steel from open-hearth steel-making furnaces.

Claim 2 reads as follows:

A stopper for a ladle or similar receptacle comprising a refractory head having a well extending downwardly thereinto, a rod having a lateral projection at its bottom inserted downwardly into the well and means separate from the head also inserted downwardly into the well above the lateral projection at the bottom of the rod into position to overlie at least a portion of the lateral projection at the bottom of the rod and thereby block withdrawal of the rod from the well and connected with the head whereby to attach the rod to the head, said means being the sole means overlying the lateral projection at the bottom of the rod.

The Patent Office Examiner rejected this claim as not patentable over the prior art, referred to as the patents of Sears, No. 1,843,175, of Bacon, No. 1,719,795, and of (British) Williams, No. 12,291. The Board of Appeals agreed, affirming the decision of the Examiner.

After a hearing the trial judge rendered an opinion containing his Findings of Fact and Conclusions of Law. He agreed generally with the analysis of the case made by the Examiner, though stating that in his court the Patent Office directed its efforts toward showing the claims contested before him were so broad as to violate the requirements of 35 U.S.C. § 112. The court referred to appellants' reliance upon a superior function of the invention, due to the fact that the refractory sleeves of the rod bear upon the surface of the inserts [1] rather than

---

1. The inserts are intended to be described in Claim 2 by the language "and means separate from the head also inserted downwardly into the well * * * said means being the sole means overlying the lateral projection at the bottom of the rod."

upon the surface of the stopper head. When the rod with the head at its end is forced down in the operation of the ladle so as to shut off the nozzle, it is claimed that the bearing of the sleeves upon the inserts reduces the stress upon the stopper head and for that reason lessens the percentage of head failures. As the court said, however, this advantageous construction "does not appear to be directly set forth in the specification, and is certainly not recited by the claims," for which reason, he continued, "the extensive arguments on this point may only be accorded slight probative weight." Reverting then to the view that the position taken by the Examiner was correct the court ended by a finding for the Commissioner and dismissed the complaint.

In this court the Commissioner points out that the Patent Office recognized that appellants had disclosed patentable substance in the specification and drawings of their application and had allowed one of the claims appropriate to this situation, not holding that there was no patentable substance in the structure disclosed in the application. It held only, insofar as now material, that patentable substance is lacking in Claim 2. Accordingly, as the Commissioner states, the real issue is not whether appellants have disclosed an invention patentable over the prior art but whether they have defined a patentable invention in the single Claim 2.[2]

The beneficial advantage of the invention due to its structure, that is, as above stated, the advantage of transmission through the inserts onto the rod flange of the thrust of the refractory sleeves covering the rod, as the rod is forced downward, thus freeing the head of the stress absorbed by the inserts, thereby lessening the danger of head failure, is not set forth in the specification which was before the Patent Office. Nor is it recited in the Claims, as the District Court pointed out. Appellants state, however, that it is covered by the words, "said means being the sole means overlying the lateral projection at the bottom of the rod." And it may be argued, as appellants do, that the structure shown in drawings before the Patent Office can be interpreted so as to show this advantage. But see Permutit Co. v. Graver Corp., 284 U.S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163. Even so the written description of Claim 2 embraces more. Its terms can be applied to structures which are quite different from Murton's; that is to say, the critical limitation "said means being the sole means overlying the lateral projection at the bottom of the rod," while it may describe Murton's invention it also describes structures other than Murton's. Thus Claim 2 is worded too broadly. It is not limited to a structure essential to accomplish the advantage claimed for the invention. That advantage does not attach to other structures covered by the language of the claim. This is basis for disallowance of the claim. 35 U.S.C. § 112 provides that the specifications shall include claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

Appellants rely on Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527, to support their proposition that an inventor is entitled to all that his patent fairly covers, even though its complete capacity is not recited in the specifications and was unknown to the inventor prior to the patent issuing; but this is a different matter from describing an invention in terms that cover the structure which has particular advantages as well as a number of other structures which do not have those advantages. Considering this defect, as well as lack of mention in the claim itself of the structural advantage alleged, the disallowance of Claim 2 was proper. Dyer v. Coe, 75 U.S.App.D.C.

---

2. The Commissioner's brief amplifies his position as follows:

Appellants have an adequate remedy by prompt prosecution of claims of proper scope in a continuation application, and by taking of appropriate steps to avoid a *res judicata* situation in such continuation application.

125, 130, 125 F.2d 192, 197. Seyfarth v. Coe, 76 U.S.App.D.C. 96, 99, 129 F.2d 58, 61.

Affirmed.

BURGER, Circuit Judge (dissenting):

The majority bases its affirmance on the grounds that the Claim at issue, Claim 2, did not set forth the advantageous construction of the invention and that it is worded so as to include other structures and is thus too broad. I cannot find support in the record for either ground.

The District Court refused Appellants' application for a patent under 35 U.S.C. § 145 because it believed that "the functional recitations do not seem comprehensive enough to distinguish structurally from the references in a manner unobvious to persons having ordinary skill in the art." Taking a slightly different tack, the majority states that the advantage of the invention is not explicitly stated in Claim 2 and that therefore Claim 2 does not define a patentable invention. But the record contains uncontradicted expert testimony directed specifically at Claim 2 stating that it does in fact describe an invention that removes the sleeve pressure from the stopper head by transferring it to a flange. It is well settled that the advantages of an invention need only to be stated so that *an expert* in the field can understand it. Hazeltine Research, Inc. v. Dage Electric Co., Inc., 271 F.2d 218, 220–221 (7th Cir. 1959).

Although Appellee had urged in the District Court that the Claim was so broad as to violate 35 U.S.C. § 112, that court made no determination on this point. The contention that the Claim was too broadly written to satisfy 35 U.S.C. § 112 wins acceptance for the first time on this appeal. We are not told by the majority how or why that Claim is too broadly worded but are presented only with a naked assertion of a conclusion. Possibly the majority is relying on Appellee's drawings, based on Claim 2, which show a structure that does not remove the sleeve load from the head as the

Claim urges. Since the asserted advantage of the Claim is inconsistent with Appellee's drawings, if the advantageous construction is revealed to one skilled in the art by the language of the Claim, then the drawings of Appellee are not accurate expressions of what Appellants' Claim represents. The issue of broadness, then, may be merely one facet of the question whether the Claim sufficiently disclosed the advantageous construction. Because the trial court's finding on this issue was contrary to uncontradicted testimony, I would remand for further consideration and clarification on this issue.